IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                      Criminal No.: 3:11CR54-02

JOSEPHINE ARTILLAGA ADAMS,

      Defendant.

## Government's Opposition to Motion for Acquittal

The United States opposes the defendant's motion for acquittal (Doc. 133) for the following reasons.

*The willful blindness instruction argument is academic because the defendant had actual knowledge*

The defendant's willful blindness argument is moot because the government proved the defendant had actual knowledge of the health care fraud investigation and of the judicial proceeding.[1] Lilly Jacob testified that Barton Adams discussed the health care fraud investigation in the defendant's presence. FBI agents Bradford May and Thomas Flosnik testified about the traumatic circumstances surrounding Barton Adams's two judicial proceeding arrests. The first time that Barton Adams was arrested was relative to the complaint issued in the judicial proceeding. He was arrested in the presence of his wife and children at the airport when the family flew into the United States from China. The shocking nature of that event made

---

[1] "[W]hen there is evidence of *both* actual knowledge and deliberate ignorance, as in the case at bar, a willful blindness instruction is appropriate." *U.S. v. Schnabel*, 939 F.2d 197, 204 (4th Cir. 1991). (Emphasis in original).

compelling the inference that when Barton Adams was released the following day, the defendant asked her husband why he had been arrested and he told her.

Similarly shocking was the circumstance surrounding Barton Adams's second arrest. That time, Barton Adams's arrest left the defendant and her children stranded on a cold winter day in a car that she could not drive in Martinsburg, West Virginia, a substantial distance from their residence in Alexandria, Virginia. Again compelling was the inference that Barton Adams told his wife why he had been re-arrested. Indeed, the defendant admitted that her husband had told her that he was being investigated for the sexual harassment of a patient. He would not have hidden from her the less embarrassing information about the fraud complaint and indictment.

*The Court properly instructed
the jury on willful blindness*

Contrary to the defendant's suggestion, *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060 (2011), a civil proceeding involving patent litigation, did not overturn the criminal willful blindness standard applied in the Fourth Circuit. The *Global-Tech* decision does not control this case because, there, the Supreme Court merely imported existing criminal law into the civil arena. 131 S.Ct. at 2069 ("Given the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement.")

The pre-existing criminal willful blindness standards were not changed. The Supreme Court recognized that "the Courts of Appeals articulate the doctrine of willful blindness in slightly different ways." 131 S.Ct. at 2070. Specifically, the Court cited with approval the Fourth Circuit's standard, annunciated in *U.S. v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991). 131 S.Ct. at 2071. ("The willful blindness instruction allows the jury to impute the element of knowledge

to the defendant if the evidence indicates that he **purposely closed his eyes to avoid knowing what was taking place around him.**" Emphasis added.) The instruction given by the Court in this case permits a finding of knowledge "if the evidence shows that the defendant deliberately and **purposely closed her eyes to avoid knowing what was taking place around her.**" (Emphasis added.) Accordingly, this Court's instruction mirrors the Fourth Circuit standard that has been approved by the Supreme Court.

### *The defendant's arguments are misplaced*

The defendant repeatedly argues over whether "Mrs. Adams closed her eyes to the risk that her husband committed criminal acts" (Doc. 133 p. 3 ¶ 7) and whether there was a high probability "that her husband . . . was engaged in health care fraud and money laundering" (Doc. 133 p. 4 ¶10). Those are red herring arguments. The government did not have to prove that the defendant knew that her husband had committed any criminal acts. The only knowledge issues in this case were instead whether the defendant knew about the health care fraud investigation and knew about the judicial proceeding. We have shown above that the defendant had actual knowledge of the investigation and the judicial proceeding. That obviates any inquiry into willful blindness. Nevertheless, we will address the *Global-Tech* willful blindness instruction issue.

The defendant cannot be heard to argue that the failure of the Court to give a *Global-Tech* type civil willful blindness instruction was fatal because the defendant failed to call the *Global-Tech* decision to the Court's attention when she objected to the willful blindness instruction on other grounds. Nor can the defendant convincingly argue that had the Court given a *Global-Tech* type instruction, there was not sufficient evidence for the jury to find willful blindness. Proof that the defendant subjectively believed there was a high probability that a health care fraud investigation and a judicial proceeding had been initiated came through the

evidence establishing that the defendant's husband told her about the investigation and the judicial proceeding.

The defendant cannot seriously argue that the deliberate and purposed act of closing one's eyes is not the equivalent of a deliberate action to avoid learning of a fact. The defendant's husband caused her to incorporate Keyfield Ltd., a shell corporation in the British Virgin Islands, to open accounts in Keyfield Ltd's name at HSBC Hong Kong and Standard Chartered Hong Kong, and to open an account in her own name at HSBC Hong Kong. Additionally, the defendant's husband had her open accounts at the Phillippines National Bank, at HSBC Canada in her maiden name, and at numerous domestic banks. During a three month period, the defendant's husband caused her to launder $1,632,933 through ten transactions utilizing foreign bank accounts that the defendant had opened and controlled.

Thus, it was obvious that the defendant's husband was hiding money. The only way the defendant could avoid learning the fact that the defendant's husband was hiding money to prevent forfeiture stemming from the investigation and judicial proceeding was for her to deliberately close her eyes to the linkage between the investigation/judicial proceeding and the money laundering transactions involving her foreign bank accounts. Thus, the *Global-Tech* civil willful blindness standard would have been satisfied if it was applicable in this criminal case.

                          Respectfully submitted,

                          WILLIAM J. IHLENFELD, II
                          UNITED STATES ATTORNEY

By:   /s/ Michael D. Stein
      Michael D. Stein
      Chief, Asset Forfeiture and
          Money Laundering Division
      WV Bar Number 8217
      United States Attorney's Office
      P.O. Box 591
      Wheeling, WV 26003
      Telephone (304) 234-0100
      Fax (304) 234-0111
      michael.stein@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that I have electronically filed the attached document with the Clerk of the Court using the CM/ECF system.

                                WILLIAM J. IHLENFELD, II
                                UNITED STATES ATTORNEY

By:   /s/ Michael D. Stein
       Chief, Asset Forfeiture and
       Money Laundering Division
       WV Bar Number 8217
       United States Attorney's Office
       P.O. Box 591
       Wheeling, WV 26003
       Telephone (304) 234-0100
       Fax (304) 234-0111
       michael.stein@usdoj.gov

laf